☑ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br>Records and information associated with the cellular telephone )<br>assigned call number (414) 414-840-3611 that is stored at the )<br>premises controlled by T-Mobile, a cellular service provider )<br>headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054. ) | Case No. 24-948M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 12/31/2024 *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   xx☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Honorable Nancy Joseph___.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
   ☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 12/17/2024 @ 11:11 a.m.                    *[signed]* Nancy Joseph
                                                                                                    *Judge's signature*

City and state:           Milwaukee, WI                    Honorable Nancy Joseph, U.S. Magistrate Judge
                                                                                              *Printed name and title*

| Return |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name(s) of any person(s) seized: |||

| Certification |
|---|
|      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A (T-Mobile)

**Property to Be Searched**

Records and information associated with the cellular telephone assigned call number **(414) 414-840-3611** (referred to in attachment B as "the Accounts"), that is stored at the premises controlled by T-Mobile, a cellular service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.

# ATTACHMENT B

## Particular Things to be Seized

**I.**     **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Accounts listed in Attachment A for the following dates: September 13, 2024, beginning at 12:00 am CST, through October 11, 2024, 11:59 pm CST:

  A.  The following information about the customers or subscribers of the Accounts:

   1. Names (including subscriber names, user names, and screen names);

   2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   3. Local and long-distance telephone connection records;

   4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   5. Length of service (including start date) and types of service utilized;

   6. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   7. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

13

Case 2:24-mj-00948-NJ     Filed 12/17/24     Page 4 of 20     Document 1

B.   All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

1.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2.   information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as per-call measurement data.

3.   per call measurement and timing advance data (PCMD, RTT, True Call, NELOS, or similar)

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18 U.S.C. § 1951(a), Hobbs Act Robbery, and Title 18 U.S.C. § 924(c), Brandishing of a Firearm during a Crime of Violence, involving CHRISTOPHER POLK, and other unknown individuals, during the period of September 13, 2024, beginning at 12:00 am CST, through October 11, 2024, 11:59 pm CST.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Records and information associated with the cellular telephone assigned call number (414) 414-840-3611 that is stored at the premises controlled by T-Mobile, a cellular service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.

Case No. 24-948M(NJ)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ _____ District of _____ _____, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Hobbs Act Robbery |
| 18 U.S.C. § 924(c) | Using, Carrying, and Brandishing a Firearm during a Crime of Violence |

The application is based on these facts:
Please see Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Heather Wright, Special Agent - FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ____telephone____ *(specify reliable electronic means)*.

Date: 12/17/2024

*Judge's signature*

City and state: Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF

# AN APPLICATION FOR A SEACH WARRANT

I, Heather N. Wright, being first duly sworn on oath, on information and belief state:

## I. INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE:

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone's assigned call number:

   a. **(414) 840-3611** ("**Target Cell Phone**"), that is stored at the premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.

2. T-Mobile will be referred to as the "Service Provider." The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Provider to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since July of 2010. Since August of 2020, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I

have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

4. Based upon my training and experience, I know that criminal investigations have been aided by subpoenas, warrants, and court orders related to electronic communication records by providing critical investigative leads and corroborative evidence.

5. To this end, based upon my training and experience, I know that individuals involved in violent crimes use cellular telephones to maintain contact with co-conspirators orally or via electronic message in "text" format. I also know that it is common for suspects who commit violent crimes to take, or cause to be taken, photographs and other visual depictions of themselves, their associates, and the illegal proceeds and firearms that they control or possess.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other Agents, law enforcement personnel, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that CHRISTOPHER POLK and other unknown individuals committed an armed robbery in violation of Title 18 U.S.C. § 1951(a), Hobbs Act Robbery, and Title 18 U.S.C. § 924(c), Brandishing of a Firearm during a Crime of Violence. I further submit that there is probable cause to believe that evidence of POLK and other's involvement in the robberies will be recovered in the records that are sought herein.

## II. PROBABLE CAUSE

1. On September 27, 2024, at approximately 8:07AM, an armed robbery took place near the Hayat Pharmacy, located at 1919 W. North Avenue, Milwaukee, Wisconsin. The victim, hereinafter referred to as C.F., spoke to the Milwaukee Police Department officers upon their arrival at the scene. C.F. stated that he has been a delivery driver of pharmaceuticals to pharmacies for the last thirteen years and has worked for YZER LLC Logistics for the last eight years. C.F. stated that he has been approached by the occasional homeless person but has never been robbed before. C.F. stated that he has no knowledge of what pharmaceutical drugs are inside the bins that are sealed inside his truck. C.F. stated that only the pharmacy and a supply company know the contents of the bins. C.F. stated that the bins were sealed and numbered to mark where they need to be delivered.

2. C.F. stated that on the morning of September 27, 2024, at approximately 6:45AM, he started his route at YZER LLC at 4930 S. 2nd Street, in Milwaukee, Wisconsin. C.F. described making multiple stops prior to arriving at Hayat Pharmacy, located at 1919 W. North Avenue in Milwaukee. C.F. stated that he did not notice anything out of the ordinary during his route and did not notice anyone following him. C.F. stated that he normally would have been driving a white Dodge Pro master 2500 van; however, the van had broken down the Wednesday prior, so his company had provided him with a U-Haul truck for his deliveries that day. C.F. arrived at Hayat Pharmacy, located at 1919 W. North Avenue in Milwaukee, at approximately 8:05 a.m., and parked in the rear parking lot of the building facing north. C.F. stated that he exited the truck and unlocked the padlocked rear cargo door. C.F. stated that he unloaded 6-7 plastic bins and one brown box. C.F. stated that all the bins/boxes were marked with two three-digit codes. C.F. stated that the first three-digit code was the code that designated the bins assigned to C.F.'s route and the

second three-digit code determined the drop-off location. C.F. stated that he loaded the bins/boxes onto a hand cart and closed the rear cargo door. C.F. stated that it was then that he noticed an individual approaching him from the west, who was already approximately 10-15 feet away. C.F. stated that his original thought was that the subject was wearing a Halloween costume; however, C.F. quickly observed that the subject possessed a pistol in his right hand. C.F. stated that the subject was a black, male, approximately mid 20's to mid-30's, approximately 6'4" tall, thin build, wearing an orange and black pattern mask with no eye holes, a dark long-sleeved T-shirt, black pants, carrying a silver/chrome semi-automatic pistol that appeared to be scratched/beat up.

3. C.F. stated that the subject quickly made his way towards C.F., with the firearm brandished, and immediately told him to drop his keys and phone. The subject told C.F. to go inside the building and call 911. The subject told C.F., "I don't want to hurt you." C.F. stated that he believed the subject may shoot him, so he complied and set his phone and keys on the ground. C.F. stated that he went inside the pharmacy and told the employee that he had been robbed. The employee then called 911 while C.F. waited for police to arrive.

4. Investigators contacted the Hayat Pharmacy for a list of pharmaceuticals that were supposed to have been delivered to the Pharmacy that morning. Employees were able to provide a manifest of the items that should have been located within the bins/boxes that were taken. Included in that list were the following items: Oxycodone 10 mg; Oxycodone 15 mg; Oxycodone 325 mg; Suboxone film 3MB; and different types of other prescription medications (not narcotics). Not only are YZER LLC and the Hayat Pharmacy businesses involved in interstate commerce, but the above listed drugs are also commodities of interstate commerce. The robbery discussed herein affected interstate commerce.

5. On September 27, 2024, video surveillance was recovered by police near the location of the incident along the pharmacy building. During the review of the footage, police were able to corroborate and observe at least a portion of the incident reported by C.F.; however, due to the quality of the video, further specific details were not visible.

6. Video surveillance was then obtained from the exterior cameras on a nearby apartment building located at 2222 N. 19th Street, Milwaukee. The exterior camera faced northbound, covering the alley, between W. Fond du Lac Avenue and W. Monroe Avenue. This alley led northbound to the parking area of the Hayat Pharmacy where the robbery took place. During a review of the footage, members of the FBI's Milwaukee Area Violent Crimes Task Force (MAVCTF) observed a black Toyota Rav4 arrive from Fond Du Lac Avenue eastbound on N. 19th Street, then turn northbound into the alley between W. Fond du Lac Avenue and W. Monroe Avenue at 7:53:26AM CST on September 27, 2024. The Rav4's rear plate was covered by a piece of fabric and had no front plate. At 7:59:32AM CST, a black male was observed walking southeast on Monroe, then walk west through a vacant field towards the alley. The black male then walked northbound in the alley towards the area where the robbery took place (the same area where the Rav4 was earlier seen entering). The robbery occurred at approximately 8:07AM CST. At 8:09:06AM CST, the Toyota Rav4 was observed exiting the alley southbound, then turned west on N. 19th Street. The driver of the vehicle appeared to be wearing a red top.

7. On September 27, 2024, a FBI MAVCTF member recovered Milwaukee County Transportation Service (MCTS) bus video that captured portions of the black Rav4's route following the armed robbery. On September 27, 2024, at 8:09:14AM CST, a MCTS bus showed the black Rav4 pull onto W. Fond du Lac Avenue from N. 19th Street and at 8:09:18AM CST, the

5

black Rav4 was observed traveling westbound on W. Fond du Lac Avenue, and then south onto N. 20th Street.

8. MAVCTF members then attempted to identify the vehicle utilizing City of Milwaukee placed surveillance cameras (also known as Flock cameras). During the review of the surveillance video of the alleyway leading towards the Hayat Pharmacy parking lot, law enforcement was able to observe multiple unique identifiers on the Rav4 that assisted MAVCTF members in locating and identifying the suspect vehicle within the Flock camera system, even without knowing the license plate number for the vehicle given that it was covered or otherwise obstructed during the robbery. The Rav4 that was observed entering and exiting the area before and after the robbery had the following identifiers:

- A black 2016-2018 (based on features on the vehicle body/style) Toyota Rav4 four door;
- Stock aluminum 5-star rims with black internal (thick-thin spokes);
- Chrome luggage rack;
- White rectangle sticker on front driver's side windshield (mid-level);
- Chrome trim lower window/door only;
- Chrome trim lower bumper;
- Split marker side view mirror;
- No front plate;
- Chrome trim rear lower bumper;
- Rear roof spoiler;
- White dealer sticker above Rav4 emblem of driver rear tailgate;
- Double emblem on rear passenger tailgate; and
- Rear center roof antenna.

9. Based on the identifiers listed above, only one vehicle was consistent with all of the identifiers when a Flock search was conducted. On September 27, 2024, at 8:19:43AM CST, the vehicle matching all the above listed identifiers was seen at the intersection of N. Sherman Boulevard and W. Capital Drive traveling southbound. The license plate on the vehicle at that time was listed as WI plate ALX-5798. The registered owner of this vehicle was listed as LAKENDRA

D. DAVENPORT, dob: XX/XX/1992 with a registered address of 3911 N. 42nd Street, Milwaukee. This address was 0.2 miles away from the N. Sherman and W. Capital Drive intersection.

10. On October 2, 2024, a United States Postal Service Inspector, who is a MAVCTF member, performed a postal records check for the registered owner's address and located a change of address request for Lakendra Davenport and Christopher Polk, from 7343 N. Teutonia Avenue Apartment 15 in Milwaukee to 3911 N. 42nd Street in Milwaukee, on January 22, 2024.

11. On October 1, 2024, a NCIC criminal history check of DAVENPORT and POLK was conducted. The physical description of POLK (DOB XX/XX/1992), per the Department of Transportation records, showed POLK as a black male, with a height and weight of 6'5" tall, 195 pounds, which is consistent with the physical description of the subject of the armed robbery that occurred on September 27, 2024. POLK also had criminal history, including felony convictions, dating back to at least 2009.

12. On October 4, 2024, United States Magistrate Judge William E. Duffin signed a timing advance/total area search warrant related to this investigation and FBI served that warrant on the cell phone providers. That warrant requested data corresponding to the robbery location as well as the Flock camera's first capture of the suspect vehicle after the robbery on September 27, 2024 near the intersection of Fond du Lac Avenue and W. Capital Drive in Milwaukee. On October 22, 2024, the return from T-Mobile was obtained.

13. On October 22, 2024, United States Magistrate Judge William E. Duffin signed a search warrant requesting additional timing advance/total area search data for two additional Flock locations associated to Flock camera captures at 2:11:10PM CST, near the intersection of N. 91st Street and W. Silver Spring Drive, and on September 27, 2024, at 4:23:03PM CST, near the

intersection of N. 35th Street and W. Silver Spring Drive. On October 25, 2024, the return from T-Mobile was obtained.

14. Utilizing open source database searches, members of the MAVCTF identified a previously reported telephone number for DAVENPORT. On October 28, 2024, a Grand Jury subpoena was submitted to T-Mobile for subscriber information for the telephone number 414-252-4946 and on November 9, 2024, T-Mobile provided the return confirming that the telephone number was associated to DAVENPORT. Call detail records were also included in the return provided by T-Mobile. A review of the call detail records was conducted and Agents were able to identify that on September 27, 2024, at 6:22AM (22 minute phone call) and at 7:31AM (14 second phone call) calls were received from telephone number 414-840-3611 (**Target Cell Phone**). According to surveillance video, the Rav4 arrived at the armed robbery location at 7:53AM, and the armed robbery took place at 8:07AM. An open records database search was conducted and came back to POLK.

15. On November 12, 2024, a Grand Jury subpoena was submitted to T-Mobile requesting subscriber information for the telephone number 414-840-3611 (**Target Cell Phone**) and on November 14, 2024, T-Mobile provided the return. Within the return, T-Mobile identified POLK as the subscriber of the telephone number.

16. Based on the investigation to date, POLK's height and weight are consistent with the physical description of the subject in the armed robbery that occurred on September 27, 2024, POLK has previously submitted a change of address to 3911 N. 42nd Street, where the registered owner of the suspect vehicle resides, and call detail records corroborate communication between POLK and DAVENPORT on the day of the armed robbery, both before and after the robbery took place.

17. On November 26, 2024, United States Magistrate Judge Steven Dries signed a court order authorizing the installation and use of a pen register and trap and trace device or process ("pen-trap device") on the T-Mobile cellular phone number 414-840-3611 (**Target Cell Phone**) and on December 2, 2024, the Court order was served. T-Mobile began providing data on December 2, 2024 at 4:32PM CST. On December 3, 2024 and on December 4, 2024, the number belonging to DAVENPORT, 414-252-4946, was in voice communication with **Target Cell Phone**.

18. On December 11, 2024, an interview of DAVENPORT was conducted by the Milwaukee Police Department and members of the MAVCTF. During the interview, DAVENPORT stated that she could not recall who was driving her vehicle on September 27, 2024. DAVENPORT was shown a booking photo of POLK which DAVENPORT identified as "Chris P". DAVENPORT stated that Chris P, as well as two her brother RAFAEL FISHER, and RODNEY RANDOLPH, drive her vehicle on occasion. DAVENPORT stated that none of these individuals have keys to the vehicle and confirmed that she was the only person with keys to the vehicle. DAVENPORT stated that POLK was an ex-boyfriend that she still communicates with. DAVENPORT stated that she could not confirm nor deny that POLK had driven her vehicle on September 27, 2024, the day of the robbery.

19. Based on the investigation to date, CHRISTOPHER POLK is believed to be involved in the armed robbery that took place on September 27, 2024 at the Hayat Pharmacy, located at 1919 W. North Avenue, Milwaukee, Wisconsin, and that the Target Cell Phone belongs to POLK. Your affiant believes that additional information, including the location data sought within this request, will assist investigators in identifying the location of POLK on the day the armed robbery occurred.

20. Your affiant is requesting the subscriber information, call detail records, text message connection records, text message content information, specialized location records, cloud storage records for telephone number, and Timing Advance for the **Target Cell Phone** for the timeframe of September 13, 2024, beginning at 12:00AM CST, through October 11, 2024, 11:59PM CST.

## IV. CELL SITE DATA

21. In my training and experience, I have learned that the Service Provider is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

22. Based on my training and experience, I know Service Providers can collect cell-site data about **Target Cell Phone**. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular phone to which they provide service

in their normal course of business in order to use this information for various business-related purposes.

23. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell Phone** user or users and may assist in the identification of co-conspirators and/or victims.

## V. AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

25. I further request that the Court direct Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

# ATTACHMENT A (T-Mobile)

**Property to Be Searched**

Records and information associated with the cellular telephone assigned call number **(414) 414-840-3611** (referred to in attachment B as "the Accounts"), that is stored at the premises controlled by T-Mobile, a cellular service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Accounts listed in Attachment A for the following dates: September 13, 2024, beginning at 12:00 am CST, through October 11, 2024, 11:59 pm CST:

- A. The following information about the customers or subscribers of the Accounts:

    1. Names (including subscriber names, user names, and screen names);

    2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    3. Local and long-distance telephone connection records;

    4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    5. Length of service (including start date) and types of service utilized;

    6. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    7. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

1.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2.  information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as per-call measurement data.

3.  per call measurement and timing advance data (PCMD, RTT, True Call, NELOS, or similar)

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18 U.S.C. § 1951(a), Hobbs Act Robbery, and Title 18 U.S.C. § 924(c), Brandishing of a Firearm during a Crime of Violence, involving CHRISTOPHER POLK, and other unknown individuals, during the period of September 13, 2024, beginning at 12:00 am CST, through October 11, 2024, 11:59 pm CST.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider to locate the things particularly described in this Warrant.